LEWIS, USE OF RINGGOLD'S ADM'R, *vs.* HOBLITZELL'S ADMR'S, AND HOBLITZELL'S ADM'RS *vs.* LEWIS, USE OF RINGGOLD'S ADM'R.—*December*, 1834.

The bonds of G, payable in 1823-4 and 5, were assigned by A the obligee, to H, who assigned them on the 2d May, 1820, to L, in the following terms: "For value received I assign to L, his heirs and assigns, the within bond, and hold myself answerable for the ultimate payment." These bonds were afterwards assigned by L to R. HELD, that in the event of L's diligent prosecution against those who stood before H, in the order of liability, upon those bonds, or by shewing the inutility of such a prosecution, he be-

came entitled to a right of action against H, upon his contract of indemnity, and that suit might be brought against him for the use of R, the equitable assignee of L. But *quere*, although it was indispensible to proceed against G, the obligor, or account for not doing it, whether it was necessary to proceed against *all* the antecedent parties to H.

In an action against the assignor of certain bonds, to shew the inutility of proceeding against the obligor, the bonds being payable in 1823–4 and 5, the certificate of the clerk of the proper court, "that it appears on the docket of August court, 1824, that the obligor had a personal release under the insolvent laws of the State; and that he again applied for the benefit of the insolvent laws of the State on the 13th March, 1830; that his day for appearance was on the second Monday of December, 1830, and by his schedule has made return of no property except what is taken under a distress for rent," is not sufficient upon a case stated, to enable the court to assume the inability of the obligor's estate, in the years 1824–5–6, and to the institution of the suit in 1829, to pay the claim, if he had been sued: although it might have been sufficient to induce a jury to find the fact of the insolvency.

In a case stated, the parties ought to agree upon and state the facts, and not the evidence of the facts; if all the facts upon which the law is claimed cannot be agreed, a jury should be called.

CROSS APPEALS from *Alleghany* county court.

This was an action of *Assumpsit*, instituted on the 25th of August, 1829, by the appellant in the first case, against *Hoblitzell* in his life-time, to charge him as the assignor of two bonds for $1000 each, payable respectively on the 1st of April, 1824, and 1825.

Issues were joined upon the pleas of *non assumpsit* and limitations; and a verdict taken for the plaintiff, subject to the opinion of the court upon the following case stated.

"On the 30th of December, 1818, *Robert G. Russell* purchased a house and lot of ground in *Bedford, Pennsylvania*, from one *John Anderson*, for $7000—$1000, part thereof was paid in cash; and the balance to be paid in six equal annual payments, commencing on the first of April, 1820, for which he gave six several bonds secured by mortgage on the premises. That on the 20th day of January, 1820, the said *John Anderson* assigned the aforesaid bonds to *Jacob Hoblitzell*, (the appellee's intestate) in his life-time, for

a full and valuable consideration, and at the same time, and as a simultaneous act, assigned him the mortgage to secure the payment of the bonds. That on the 2d of May, 1820, two of the said bonds, and on the 22d May of the same year, one other of the said bonds, were assigned by said *Hoblitzell* to *Henry Lewis*, (the appellant) for a full and valuable consideration, in the terms following: "For value received I assign to *Henry Lewis*, his heirs and assigns, the within bond, and hold myself answerable for the ultimate payment. May 2d, 1820."

That on the 17th of February, 1821, three of the bonds payable in 1823-4 and 5, were assigned by said *Lewis* to *Samuel Ringgold*, (for the use of whose administrator the present action is brought.) The plaintiff further proved, that on the 18th of April, 1823, suit was instituted in the *Alleghany* county court, in the name of said *Lewis* for the use of *Ringgold*, against *Hoblitzell*, as the assignor of the bond which became due on the 1st of April, 1823, in which suit there was a verdict and judgment for the defendant, at the October term of that court in the year 1824. That on the third day of September, 1823, suit was instituted in *Frederick* county court, on the same bond, in the name of *Anderson*, the obligee, for the use of *Ringgold*, against *Russell*, the obligor, who confessed judgment therefor, on the 3d of August, 1824, and that nothing was ever received from the said *Russell*, on either of the said bonds, except the sum of $1669 63, from the sale of the mortgaged premises in *Bedford*. That *Isaac S. Swearingen*, to whom *Ringgold's* proportion of the proceeds of the mortgaged premises was paid, was his agent in the collection of the money due on the said bonds, and as such agent, he caused the suits to be instituted in *Alleghany* county court against *Hoblitzell*. That he then went to *Pennsylvania* to proceed on the mortgage, one of the said bonds being then either lost or mislaid, and that he afterwards got that bond from *Franklin Anderson*. That he employed counsel in *Bedford*, with directions to proceed as fast as possible in the

business, it being his desire to obtain all the money from *Anderson*, rather than resort to *Hoblitzell*. That *Anderson* was solvent in 1828, and that no other suit or suits were at any time instituted against him on his assignment of the aforesaid bonds, or mortgage, and no other suit was brought against said *Russell*, except that already mentioned in *Frederick* county court.

The plaintiff also offered in evidence the following certificate. "I hereby certify that it appears on the docket of August court, 1823, that *Robert G. Russell* has had a personal release, under the insolvent laws of this State, and on the 13th March, 1830. That his day for appearance was on the second Monday of December, 1830, and by his schedule has made return of no property, except what is in the constable's hands, taken under distress for rent.

Test,          *John Schley*, Clerk."

Upon this statement the county court gave judgment for the plaintiff, for the amount found due by the jury, deducting the sum received by the plaintiff from the proceeds of the mortgaged premises in *Pennsylvania*.

Both parties appealed to the court of Appeals.

The cause was argued before BUCHANAN, Ch. J., and STEPHEN, and CHAMBERS, J.

*Dixon* and *Johnson*, for *Hoblitzell's Admr's*, contended,

1. That the plaintiff is not entitled to recover, in consequence of his neglect to proceed against *Russell*. Unless due diligence was used to recover the money from *Russell*, the principal debtor, the secondary liability of *Hoblitzell* did not attach. His engagement was not absolute, but conditional. It was a contract of indemnity, to save harmless, and no more; and he could only be held responsible, upon the insufficiency of the means of the principal to pay the debt, being ascertained by a diligent prosecution of every legal remedy against him. Act 1763, *ch*. 23, *sec*. 9. 3 *Harr. and Johns*. 235. The obtention by *Russell* of a personal dis-

charge is not evidence of insolvency. A party who has been discharged is not a competent witness for his trustee, because of his interest in the surplus of his estate, and of course the law presumes there may be a surplus.

The assignor of a bond is only answerable when the exercise of due diligence has failed to recover the money from the principal debtor, and the *onus* of the proof is upon the plaintiff. 2 *Hen. and Munf.* 114. (*note* ) 16 *Serg. and Lowb.* 29. This suit is upon the assignment of the bonds which fell due in 1824 and 1825, and upon them suits were never brought against the obligor, and no fact is stated, which furnishes a legal excuse for not doing so.

2. The money should have been recovered from *Anderson*, the obligee, against whom a suit might have been instituted in the name of *Hoblitzell*, for the use of *Lewis*. It was a *Pennsylvania* contract, and consequently it is no answer to say, that the plaintiff is excused from proceeding against him because he resided in that State.

This cause comes before the court upon a case stated, and no inferences of fact are to be made but such as are inevitable. 2 *Harr. and Gill,* 119, 320. 3 *Gill and Johns.* 158.

On the appeal of *Lewis* they insisted, that the verdict was conclusive upon the question of the application of payments.

*Price,* for *Lewis.*

On the bond which became due in April, 1823, suit was instituted to the first term thereafter against *Russell,* soon after which he petitioned for the benefit of the insolvent laws, and obtained a personal discharge. And he petitioned again in 1830, having no property which could be made liable for this debt. A suit therefore would have been fruitless, and need not have been brought. The inability to pay a debt, is a matter to be inferred from circumstances, and need not be expressly proved. The plaintiff had already sued *Russell,* on the bond of 1823, and recovered a judgment, from which nothing could be realized; why then

should they encounter the expense and trouble of securing the others.

2. Proceedings against *Anderson* were not necessary to fix the liability of *Hoblitzell.* The assignment by *Anderson* to *Hoblitzell*, was a naked assignment, and created no liability from the former to the latter, but if it did, there could be no obligation on *Lewis* to go to *Pennsylvania* in pursuit of him. The cases in *Virginia*, upon the subject of the responsibility of the assignor to the assignee, were decided upon the principle of treating sealed notes, as negotiable instruments. 3 *Gill and Johns.* 242. There was no obligation on *Ringgold* to go to *Pennsylvania* to proceed upon the mortgage, though he had a *right* to do so if he chose. The money received by him there from the proceeds of the mortgaged premises, he had a right to apply to the debt most in jeopardy, and that was the bond of 1823. 6 *Cranch*, 27, 28. 5 *Taunt.* 601. 1 *Serg. and Low.* 203. And besides, as that bond first became payable, it should have been first paid. 1 *Bay.* 497.

CHAMBERS, J., delivered the opinion of the court.

It is clear that the assignment of *Hoblitzell* to *Lewis*, by the express terms of which, he made himself responsible for the ultimate payment of the debt assigned, would subject *Hoblitzell* to an action at the suit of *Lewis*, in the event of *Lewis'* diligent prosecution against those who stood before *Hoblitzell* in the order of liability, or by showing an excuse for, or in other words, the inutility of such prosecution.

We think that *Ringgold*, being in point of fact the equitable assignee of *Lewis*, the suit might well be instituted in the name of *Lewis* for his use. Much argument has been urged on one hand to sustain, and on the other to resist the proposition, that the obligation of *Hoblitzell* did not arise until an effort had been made to enforce the demand against *Anderson*, as well as against the mortgaged premises. Upon this proposition it will be unnecessary for us to

express an opinion, as our decision will be given upon grounds not involving its justness.

It cannot be controverted, that before the liability of *Hoblitzell* could accrue, it was necessary to use due diligence against *Russell*, or to account for the want of it, by proof of his entire inability to pay.

That no suit has been instituted against him on these bonds is admitted, and therefore due diligence is disclaimed; but it is said, that "facts and circumstances" set forth in the case stated, prove an excuse, by shewing his inability to pay. The parts of the record to which we are referred, and in which alone, any thing can be found, having any reference to this subject, are *first*, the certificate of the clerk of *Frederick* county court, in these words: "I hereby certify that it appears on the docket of August court, 1824, that *Robert G. Russell*, has had a personal release under the insolvent laws of this State, and that he again applied for the benefit of the insolvent laws of this State, on the 13th of March, 1830. That his day for appearance is on the second Monday of December, 1830, and by his schedule, has made return of no property, except what is in the constable's hands, taken under distress for rent. Test, *John Schley*, Clerk."

*Next*, the statement of *Swearingen's* proceedings as agent of *Ringgold*, the assignee, who "caused a suit to be instituted in 1823, in *Alleghany* county, against *Hoblitzell*," which was an action upon the assignment of another bond, and in which action the plaintiff was non-suited; and another suit in *Frederick* county against *Russell*, in 1823, which was an action upon another bond, and upon which bond judgment was obtained, and no proceeding by execution issued—"And went to *Bedford, Pennsylvania*, and employed counsel to proceed on the mortgage, and against *Anderson*. That he resorted to all the efforts aforesaid, wishing to obtain all the money from *Anderson*, rather than resort to *Hoblitzell*; and that he directed his lawyers to proceed as fast as possible in the business aforesaid," which we are

asked to connect with a prior part of the case stated. "That nothing was ever received from said *Russell*, on either of said bonds, except from the sale of the mortgaged premises in *Bedford*."

We have no means of determining the date of the clerk's certificate, except that it speaks of the application in March, 1830, in the past tense, and not so of the day for appearing in *December*, nor is the purpose avowed for which it was introduced. We are also left to conjecture to which of the two applications it intends to attach the "schedule" spoken of. It would seem to be a part of the proceedings of 1830, as the certificate says, the property returned thereby "*is*" in the hands of the constable. The certificate therefore proves nothing in regard to the property held by *Russell*, when the "personal discharge" was obtained, nor does it deny that he returned a schedule, or if any, to what amount. He might have had ample estate to pay all his debts in the year 1824, 1825, and 1826, and to the institution of this suit, and it might have appeared even on the face of his schedule, returned when he obtained the personal release, that he had large and ample funds, and yet every word in the certificate be literally true.

The proceedings of *Swearingen*, the agent, and every thing stated in regard to them, are as inconclusive as the certificate, and the history of his acts and directions may be strictly given in the statement, and yet leave it entirely possible that *Russell* was solvent, and the additional fact that nothing was received from *Russell*, does not supply the chasm, or constitute the conclusive proof of inability to pay on the part of *Russell*, which alone can avail the party, in a special verdict or case stated. The circumstances might probably have induced a jury to infer the insolvency of *Russell*, although we cannot but think it would have been prudent to aid them by some little evidence from individuals, who residing in the vicinity and acquainted with his pecuniary condition, might speak to the fact of his having property, in terms at least as satisfactory as these "circumstances" do.

The cases in this court are full in regard to this matter. In *Reeside vs. Fisher,* 2 *Harr. and Johns,* 320, the *Replevin* was issued and served on the 4th of March, 1824. The defendant justified as deputy *Marshall* under a seizure made in virtue of a *fieri facias,* which issued on the 18th of December, 1823, and was returnable on the first Tuesday of March, 1824. These facts appeared in a case stated, and the court would not *infer* that the property thus seized, remained in the defendant's hands, as deputy *Marshall,* the case stated, not expressly asserting it; because it might be that the goods had been sold, and left in the defendant's hands by the purchaser, or that the debt had been paid, and the goods permitted to remain by the owner, consistently with any thing appearing on the statement. In *Hysinger vs. Baltzell,* 3 *Gill and Johns.* 158, the court would have imputed *laches,* if it had been alleged in the case stated, "that the defendant was in *Baltimore* for two days, and that the plaintiffs *knew* he was there for that space of time," but it being only stated, that the defendant was in *Baltimore,* purchased goods from the plaintiffs, and remained there two days, the court thought it consistent with the statement, that the purchase of goods might have been immediately before the defendant left *Baltimore,* and therefore without enabling the plaintiffs to sue out a writ with effect, the omission to do which, was charged as *laches.*

The pervading error in the case at bar is, that the "evidence of facts," is set out instead of the facts themselves. The statement furnishes little else but evidence. If all the facts upon which the law is claimed, cannot be agreed, a jury should be called. As the judgment of the county court should have been for the defendants on the facts as stated, and cannot be complained of by the plaintiff, but is erroneous as to the defendant below, *we affirm the judgment on the appeal of Lewis use of Ringgold's Adm'r, and reverse it, and order a* PROCEDENDO *in the case in which Hoblitzell's Adm's are the appellants.*