TUNIS VAN BRUNT *vs.* HENRY PIKE, AND E. V. AND GEORGE W. WARD.—*December* 1846.

Where an appeal comes up on a case stated, it must be decided by the facts agreed on. Legal presumptions may be made, and necessary conclusions drawn, but inferences from facts, which may, or may not, be true, cannot be made by the court.

A party in possession of personal property, exercising acts of ownership over it, must be treated as the owner until the contrary appears.

A quantity of pig iron on the bank of a canal in *Frederick* county, under the care of *one* agent of the owner, was sold by another of his agents in *Baltimore*, who gave his receipt to the purchaser for the purchase money. The purchaser wrote to the agent in *Frederick*, to ship the iron to his agent at another place. HELD, that these facts constituted a constructive delivery of the iron to the purchaser.

Van Brunt *vs.* Pike and Ward.—1846.

In relation to a ponderous article of merchandise, incapable in the ordinary course of business of actual delivery, as *pig iron*, all the law requires to change the possession after a sale, is constructive delivery.

Where a party is in possession of an article intended to be affected by an attachment, he should be returned by the sheriff, as the garnishee.

Where there had been a valid sale and delivery of personal property, the act of 1834, ch. 79, which required the transfer of a non-resident to be recorded, does not apply.

APPEAL from *Washington* county court.

This was an *attachment*, to compel the appearance of *Gideon Freeborn, Mentor Perdue,* and *William E. Craft,* trading under the firm of *Gideon Freeborn & Co.,* at the suit of *H. Pike and Ward,* issued out of *Frederick* county court, on the 21st November 1842, and to recover the sum of $995.55, due from *G. F. & Co.* to the appellees. The attachment was laid upon eighty-three tons of pig iron, on the same day, as the property of the debtors. *Henry Jameison* appeared, by counsel, as the garnishee of *G. F. & Co.,* having given counsel authority so to appear, but he now moved the county court to strike out his appearance, as he had not been summoned to appear to, nor notified of the attachment, by the sheriff.

The appellant now moved the court, upon the ground, that he was in the actual possession of the iron attached, by his agent the said *H. J.,* at the time of, &c., for permission to appear as claimant thereof, and was accordingly permitted to appear and defend the same from condemnation. He pleaded in bar, property in himself, and not in *G. F. & Co.,* upon which issue was joined.

At the next term, upon suggestion of the appellant, the record was transmitted to *Washington* county court for trial.

It is admitted in this case, that the iron that was attached, was, at the time it was attached, lying on the banks of the *Chesapeake and Ohio Canal,* at a place called the *Point of Rocks,* where the same had been brought from the furnace of *William E. Craft,* by *Henry Jameison,* who was employed by said *Craft,* one of the defendants in this case, to transport the same for him to his agents in *Georgetown.* That the said iron had been attached previous to the *25th of October* 1842, by sundry creditors of *Gideon Freeborn & Co.,* which said

attachments were, on said last day, dissolved by the filing of bonds, under the provisions of the act of Assembly of 1834, ch. 79. It is further admitted, that *Reuben Rowley*, as the agent of said *Craft*, who was one of the defendants in said cases, did, on the said 25th day of October 1842, sell and dispose of the iron in question to *Tunis Van Brunt*, the party claimant in this case, the said iron then still being at the *Point of Rocks*, and did then deliver to him the account and receipt thereon, which is in the following words and figures:

"BALTIMORE, *Oct'r 25th*, 1842.

*Tunis Van Brunt*, to *William E. Craft*,        DR.

To eighty-three tons of pig iron, lying at the *Point Rocks* in *Frederick* county, at $24.00 pr. ton,        $1992.00.

Received payment,        WILLIAM E. CRAFT, by $1992.00.                R. *Rowley*, his attorney."

That the said *Van Brunt*, on said 25th of October 1842, immediately after he had so purchased said iron, sent to said *Jameison*, by *Rowley*, the following order and directions in relation to said iron:

"MR. H. JAMEISON,

*Sir:*—You will please to forward the eighty-three tons of pig iron lying at the *Point of Rocks*, which I have purchased of *William E. Craft*, to *Georgetown*, to the care of *F.* and *A. H. Dodge*, with directions to them to ship the same to my order in the city of *New York. Baltimore*, October 25th, 1842.                TUNIS VAN BRUNT.

VAN BRUNT & ADAMS, *Baltimore*."

And the said *Rowley* also, at the same time, executed and delivered to said *Van Brunt* the following order:

"FREDERICK, *Oct'r 29th*, 1842.

*Gent:*—The eighty-three tons of iron which *Mr. Tunis Van Brunt* has directed *Mr. Henry Jameison* to take down from the *Point of Rocks*, to your care, to be forwarded to his order in the city of *New York*, you will please ship as early as possible, and write to me in the city of *New York*, if you please, when you so ship it. You will please to pay *Mr. Jameison* $1.62½ per ton, for freighting it down, and draw for it with

your commission, &c., on forwarding the iron to *New York*, when it will be paid by *Van Brunt*.

> Your ob't, &c.,    R. ROWLEY,
> 49 *Nassau street, New York.*

To F. & A. H. DODGE, *Georgetown, D. C.*"

Which two said orders the said *Rowley* delivered to said *Jameison*, on last said day, who received the same and agreed to attend to them. It is further admitted, that said iron was not taken away from the *Point of Rocks*, as directed, but remained there until the attachment in this case was levied on the same, which was on the 21st November 1842. That *Gideon Freeborn, Mentor Perdue*, and *William E. Craft*, the defendants in this attachment, at the time of issuing the same, resided, and still reside, out of this State. And that said *Van Brunt* also resided, at the time of said sale to him, and still resides, out of this State, but was in this State at the time he made said purchase. It is further admitted, that the said sale, and account and receipt, were never recorded in the county of *Frederick*, or elsewhere, in pursuance of the act of Assembly of 1834, ch. 79. Upon the aforegoing statement of facts it is agreed, that if the court shall be of opinion, that the said *Tunis Van Brunt* did not acquire title to said iron, as against said attaching creditors in this case, then a judgment of condemnation to be entered in favor of the plaintiffs; but if the court shall be of opinion, that the said *Van Brunt* did acquire title to said iron, as against said attaching creditors, then the said attachment to be quashed, either party to be at liberty to take this case to the Court of Appeals, by appeal, or writ of error.

The county court rendered judgment of condemnation upon the said statement of facts, and *Tunis Van Brunt*, claimant of the iron, prosecuted this appeal.

The cause was argued before ARCHER, C. J., DORSEY, SPENCE and MAGRUDER, J.

By F. A. SCHLEY for the appellants, and
By PALMER and W. PRICE for the appellees.

ARCHER, C. J., delivered the opinion of this court.

In the case of *Wells, Miller, and Cooper, vs. Biscoe,* Mss. decision of this, court at Dec'r T. 1844, it was decided, that where there was a *bona fide* sale of iron in the warehouse of the *Ellicotts,* and an order for the delivery thereof, which was accepted by them in favor of the vendee, the title of the vendee should prevail against a creditor of the vendor, who issued his attachment to affect such property, notwithstanding the act of 1834, ch. 79, this court being of opinion, that such a case was not embraced by the act of Assembly adverted to, and that, therefore, it was not necessary to record such transfer.

It will be only necessary for us, therefore, to enquire, whether it appears from the case stated, there has been a sale and delivery of the goods attached in the case now before the court, before the attachment issued by the plaintiff?

The case comes up on a case stated, and must be decided by the facts agreed upon. Legal presumptions may be made, and necessary conclusions may be drawn, but we cannot make inferences from the facts which may or may not be true. These doctrines appear to be deducible from the cases in 2 *H. & G.,* 320. 3 *G. & J.,* 158, and 6 *G. & J.,* 266. That the property attached had been the property of *Craft,* is apparent from the statement.

The iron attached was in the hands of *Jameison,* the agent of *Craft,* who had brought it from the furnace of *Craft,* and who was employed by *Craft* to transport the same for him to his agent in *Georgetown.* He was thus in possession of the iron, exercising acts of ownership over it, and being thus with the *indicia* of property, must be treated as the owner, until the contrary appears.

Being thus the owner, it is equally clear, that it was sold to the claimant. This is admitted in express terms. It is admitted, that *Rowley,* as the agent of *Craft,* on the 25th of October 1842, sold and disposed of the iron to *Tunis Van Brunt,* and that he delivered to him a bill of parcels for the iron, with a receipt thereon, for the purchase money. If, to perfect the sale, the payment of the purchase were considered necessary, that fact is evidenced by the receipt on the bill of parcels, and

is to be taken by us as payment, in the absence of evidence to the contrary, and so far as the question and this statement is concerned, is just as efficacious as would be the admission, that the money was paid.

The next and only enquiry is, was the iron delivered in pursuance of the contract?

It certainly would not be necessary to prove a manual or actual delivery of the property. It consisted of eighty-three tons of pig iron, lying on the banks of the *Chesapeake & Ohio Canal*. It was a ponderous article, incapable in the ordinary course of business of actual delivery. In such a case, all that the law requires is constructive delivery, and the enquiry is, was there a constructive delivery in this case?

On the 29th of October 1842, an order from the vendee to *H. Jameison*, directing him to forward it to *F.* and *A. H. Dodge*, at *Georgetown*, with directions to ship to the vendee in *New York;* and also an order from the agent of the vendor, giving further directions in relation to the shipment, and the payment to *Jameison* of the freight for transportation, directed to the shipper at *Georgetown*, are presented on the 29th of the same month to *Henry Jameison*, who agreed to attend to them.

We thus perceive, that *Jameison* is notified of the sale by the vendee and the agent of the vendor; that the vendee exercises an act of ownership over the property, by appointing *Jameison* as his agent, to forward the property; that all this is done with the consent of the agent of the vendor, by his letter to *F.* and *A. Dodge;* that these facts are made known to *Jameison*, and that he undertakes the agency.

Now, if *Jameison* were in the possession of the property on the 29th of October, when these orders were delivered to him, and when he assumed this agency for the vendee, then within the principle of the case of *Wells, Miller and Cooper, vs. Biscoe*, above adverted to, the cases cited, there was a delivery to the vendee, and the sale was complete.

The enquiry then is, was *Jameison* in possession of the property on the 29th of October 1842? It is a fact admitted, that he was put originally in possession by the owner, *Craft*, of this iron for transportation to *Georgetown*, but before it reached

the place of destination, it was attached by sundry creditors of *Freeborn, Perdue & Co.*, at what time does not appear; but it is admitted, that these attachments were dissolved on the 25th of October 1842. In the levy of the attachments, anterior to the 25th of October 1842, we cannot presume the sheriff disturbed the possession of *H. Jameison*, who, as agent, was entrusted therewith for transportation, because, being in possession of the iron, it was the duty of the sheriff to return him as garnishee. Upon the dissolution of the attachments, this continued possession was unaffected by the lien of the attachments. He is admitted to have been in possession anterior to the attachments, and is not shown by any evidence to have been out of possession, either voluntarily or by coercion, anterior to the day when he assented to execute the orders delivered to him, by which a change of property was effected.

According to these views, there has been a valid sale and delivery of the iron in controversy, and the transfer not requiring to be recorded, according to the decision of this court in the case of *Wells, Miller and Cooper, vs. Biscoe*, above adverted to, the judgment of the county court must be reversed, and judgment entered in this court on the case stated, that the attachment be quashed according to said statement.

JUDGMENT REVERSED.