HENRY A. THOMPSON and CHARLES L. OUDESLUYS,
Garnishees of GILL, HARDMAN & STEPHENS, and
DANIEL WILSON, Claimant, *vs.* THE BALTIMORE
AND OHIO RAIL ROAD COMPANY.

*Sale and Constructive delivery— Symbolical delivery— Vendor's lien—Stoppage in transitu as between Vendor and Vendee.*

A quantity of pig iron lying in piles at a furnace and on the road was sold, and the parcels constituting the whole were pointed out and shown by the agent of the vendor to the agent of the vendees, and the whole was charged in the books of the vendor to the vendees by their agent, under the direction of the vendor. HELD:

That these acts being done with the intent and for the purpose of making delivery, constituted such a constructive delivery as would pass the title to the vendees.

In deciding what acts will constitute delivery, regard must be had to the subject-matter of sale, the character of the transaction, and the intention of the parties, in order to ascertain whether the delivery was such as the nature of the case admitted.

Where ponderous articles incapable in the ordinary course of business of actual manual delivery, are the subject of sale, symbolical or constructive delivery is sufficient, and such constructive delivery is sufficient, and such constructive delivery may be implied from the acts of the parties.

There is a marked distinction between those acts, which as between vendor and vendee, upon a contract of sale, go to make a constructive delivery and to vest the property in the vendee, and that actual delivery by the vendor to the vendee, which puts an end to the right of the vendor to hold the goods as security for the price; and the law in holding that a vendor who has given credit for goods, waives his lien for the price, does so on one implied condition, which is, that the vendee shall keep his credit good. If, therefore, before payment, the vendee become bankrupt or insolvent, and the vendor still retains the custody of the goods, or any part of them; or if the goods are in the hands of a carrier, or middleman, on their way to the vendee, and have not yet got

into his actual possession, and the vendor, before they do so, can regain his actual possession, by a stoppage *in transitu*, then his lien is restored, and he may hold the goods as security for the price.

The lien of the vendor always exists until he voluntarily and utterly resigns the possession of the goods sold, and all right to detain them. So long as the vendor does not surrender actual possession, his lien remains, although he may have performed acts which amount to a conclusive delivery, so as to pass the title or avoid the statute.

In all cases of symbolical delivery, which is the only species of constructive delivery, sufficient to give a final possession to the vendee, it is only because of the manifest intention of the vendor utterly to abandon all claim and right of possession, taken in connection with the difficulty or impossibility of making an actual and manual transfer, that such a delivery is considered as sufficient to annul the lien of the vendor.

AN APPEAL from the Superior Court of Baltimore City.

At the trial below, the appellee, the Baltimore and Ohio Rail Road Company, offered four prayers, which were granted. No question is raised as to the granting of the first, third and fourth prayers, and they are therefore omitted; the second prayer is as follows:

That if the jury shall believe from the evidence that the said William Whitman, mentioned by the witnesses was in the month of May, 1855, the possessor and owner of the Fanny Furnace, and its appurtenances, and of the pig iron then and there being, and that he was indebted then and there, on previous transactions, to the defendants, and that he did then and there in consideration of said indebtedness, and in good faith assign, among other property, said pig iron to the said defendants, that a part of said iron was at said furnace, and a part on the road to Independence, on the Baltimore and Ohio Rail Road, and that in pursuance of the said agreement, and for the purpose of making a delivery of the said iron to the defendants, he directed the witness, Baker, to show the same to the witness, Lamb, and that said Lamb was accordingly shown the said iron which was at the furnace, and upon the road, by the said Baker, or by some other person,

and the persons showing· said Lamb the said iron, were the agents of the said Whitman in so doing, and that the said Lamb was the agent of the defendants, and that the said Whitman then and there directed the said Lamb, to have the said iron charged on the books of the said Whitman, against the defendants, and that it was so charged, then there was in law such a delivery of said iron to the said defendants, as precluded the said Whitman from the exercise of any acts of ownership over it, without the assent of the said defendants, even though subsequent to such agreement and delivery of said iron, the jury should find that the said defendants failed in business and were under protest.

The appellant, Wilson, also offered four prayers, the third of which was admitted to be correct and properly granted. The other prayers are as follow:

1st. If the jury shall find from the evidence that Hardman and Whitman were co-partners in the management and ownership of the Fanny Furnace, from about the 1st of January, 1855, and as such co-partners, were responsible for the debts of the said furnace, then existing, and that the said co-partnership was insolvent, and on or about the 23d of May, of that year, the said Whitman and Hardman entered into an agreement by which, for the purpose of protecting the property of said furnace from the claims of creditors, or to procure against the will of said creditors, a longer time for the payment of said debts than they could otherwise procure, to execute a deed of the said property to a trustee for the benefit of the said Hardman, and to charge the iron in controversy on the books of said Whitman to the said defendants, so as to effect an apparent but fraudulent transfer of the property in the same, then the jury are at liberty to find that the said agreement in so far as it relates to the said iron, and all that was done in pursuance thereof, is fraudulent and void, and the plaintiff is not entitled to recover upon the second issue.

The Court refused the prayer as offered, but granted it with this modification:

"Provided the jury shall find that the claimant was a creditor of Whitman at the time of the assignment."

2d. If the jury find from the evidence, that, on or before the 22d of May, 1855, Hardman was a secret partner of Whitman in the ownership and carrying on of the Fanny Furnace, and that on the said 22d of May, the said Whitman and Hardman agreed that the pig iron in controversy in this cause should be considered as sold to the firm of Gill, Hardman & Stephens, of Wheeling, and shall also find that said iron was pointed out by Baker to Lamb, as stated in said Lamb's evidence, and counted by him, and was afterwards forwarded by direction of said Hardman to Sandy Creek, on its way to Wheeling, and that while said iron remained at Sandy Creek, at Fanny Furnace, and at points on the road between these places, the said firm of Gill, Hardman & Stephens, became insolvent without having paid for said iron, that then Whitman had the right to repossess himself of said iron, either by taking possession of it himself, or by authorizing and directing Daniel Wilson to do so.

This instruction the Court refused as offered, but granted with the following modification :

"This prayer is granted as to the stoppage in *transitu*, unless the jury find the facts to be true as stated in the plaintiff's second prayer."

4th. If the jury shall find from the evidence that the iron in controversy was delivered to the defendants, by being shown to their agent Lamb, and by being charged on the books of Whitman to the defendants, but in fact remained at the furnace and on the road-side without being taken away or otherwise put into the possession of the defendants, and that the said delivery was made against certain notes of the defendants given to the said Whitman in advance for the said iron, which notes were then outstanding and unpaid, and that the title to said iron remained in the same condition as between said Whitman and said defendants, without the intervening claim of any third party at the time it was sold to Wilson, if

the jury shall find such sale, and that whilst the said iron so remained, the said defendants were insolvent and unable to pay their said notes, then the said Whitman had a right to re-take the said iron before it came into the actual possession of the defendants, and if the jury shall find that the said Wilson did re-take it, either by himself or an assignment to Wilson, who, under said assignment, re-took it, then the plaintiff cannot recover on the second issue.

And the verdict and judgment being in favor of the plaintiff, the defendants and the claimant Wilson appealed.

The cause was argued before BARTOL, C. J., STEWART, GRASON and MILLER, J.

*I. Nevett Steele*, for the appellant, contended:

1st. That the mere showing of the iron by the vendor's agent to the agent of the vendees, without any act of ownership or possession on their part, was not a sufficient delivery of the iron to pass the title and complete the sale. *Van Brunt vs. Pike and Ward*, 4 *Gill*, 270; *Atwell vs. Miller and Mayhew*, 6 *Md. Rep.*, 10; *Story on Sales*, sec. 311.

2d. That by such a delivery, the actual possession of the vendor was not so parted with as to defeat his lien; nor was such a possession acquired by the vendees as to prevent stoppage *in transitu:* that so long as no act of ownership or possession has been exercised by the vendees, the vendor had the right to assert his lien. *Hall and Loney vs. Richardson*, 16 *Md. Rep.*, 396; *McEwan vs. Smith*, 2 *H. L. Cases*, 309; *Parks vs. Hall*, 2 *Pick.*, 206; *Gibson vs. Carruthers*, 8 *M. & W.*, 321, 328, 334; *Miles vs. Gorton*, 2 *Crompt. & M.*, 504; *Newhall vs. Vargas*, 15 *Maine*, 314; 2 *Kent's Com.*, 541; *Cross on Law of Lien*, 34 *Law Lib.*, 243, 244; *Dixon vs. Yates*, 5 *Bar. & Adolph*, 313; *O'Brien, et al. vs. Norris, Caldwell & Co.*, 16 *Md. Rep.*, 131; *Story on Sales*, secs. 286, 287, 290; *Karthaus vs. Owings*, 4 *H. & J.*, 269; *Lickbarrow vs. Mason*, 1 *Smith's Leading Cases*, 711.

Thompson, *et al.*, Garns., *vs.* Baltimore and Ohio Rail Road Co.

3d. The modification of the appellant's first prayer by the Court below, was erroneous.

*Ferdinand C. Latrobe* and *John P. Poe*, for the appellee:

The second prayer of the appellee defines what amounted to a delivery in connection with the facts in the case; and if the definition be correct, the judgment below must be affirmed, inasmuch as the sale to Gill, Hardman & Stephens antedates, in such event, that under which Wilson claims. *Van Brunt vs. Pike & Ward,* 4 *Gill,* 270; *Atwell vs. Miller & Mayhew,* 6 *Md. Rep.,* 10; 1 *Bouvier's Law Dict.,* 396; 2 *Kent's Com.,* 500, 503; *Hall & Loney vs. Richardson,* 16 *Md. Rep.,* 396.

The first prayer of the claimant, Wilson, raised the question of the good faith of the assignment of Whitman to the defendants, and was to that extent the converse of the plaintiff's second prayer; but it had this defect, it had no reference to Wilson's claim. It left the jury to find for him, without previously finding that he was a creditor, whose debt was the consideration of the assignment under which he claimed.

The theory of the claimant's second prayer was, that there was no such delivery, as prevented the application of the law of stoppage *in transitu.* But it being clear, that the moment there was a delivery, this law became inapplicable, the Court modified the instruction by making it available, only in the event of the jury failing to find a delivery, as defined in the plaintiff's second prayer. But there was objection to the granting of the prayer, even with the Court's modification. Stoppage *in transitu* implies necessarily an existing debt as between the vendor and the vendee, to give to the former the right to exercise it. It is a remedy in cases of sales on credit. Now, in this case, the testimony is, that Whitman admitted an indebtedness to Gill, Hardman & Stephens of $9,000, and it was in payment of this indebtedness that the assignment was made; so that the sale to Wilson was not of a claim which carried with it the vendor's right to stop *in transitu,* but of property previously assigned to another party in satis-

26                    v. 28

faction of an existing debt, when clearly, the doctrine now invoked, could not be made to apply. The only ground on which the claimant's prayer, even with the Court's modification, could be sustained, is to be found in that part of the prayer, which leaves it to the jury to find that Gill, Hardman & Stephens " had not paid for the iron at the time of the assignment. But there was no evidence to this effect. It is true, that the plaintiff proved that the indebtedness, which was the consideration of the assignment, was for advances of money and notes by Gill, Hardman & Stephens to Whitman, and that the claimant proved that a note of the firm due in August, had been protested; but it nowhere appears in the evidence that this note was one of the notes advanced as aforesaid.

The claimant's fourth prayer was necessarily refused. The Court had already, in granting the plaintiff's second prayer, defined what constituted a delivery under the circumstances of this case, and to have granted the claimant's fourth prayer would have been to give a different definition. The theory of the claimant here, is that there could be no delivery of the iron unaccompanied by actual removal. But the Court had already denied this proposition, and therefore refused the prayer. It would thus appear that there were but two questions in this case, first, whether the transaction between Whitman and Gill, Hardman & Stephens was *bona fide?* A question of fact upon which the jury passed. And second, whether the facts stated hypothetically in the plaintiff's second prayer amounted to a delivery? A question of law on which this Court is now to pass.

MILLER, J., delivered the opinion of this Court.

The appellee issued an attachment against Gill, Hardman & Stephens, non-residents, which was laid in the hands of the garnishees to affect a certain quantity of pig iron consigned to them by the appellant, Wilson, who claimed it as his property. The plaintiff, the Rail Road Company, insists

that the iron belonged to their debtors under an assignment and delivery thereof to them by the owner Whitman. Wilson claims " it under a subsequent assignment from the same party," under which he took possession and forwarded the iron to Baltimore, to the garnishees, to be sold on his account. It appears the iron, consisting of some sixty odd tons, before either of these assignments was made, was lying in half and quarter ton piles, part at the Fanny Furnace in Virginia, where it had been smelted, part on the road to Sandy Creek, and part at Sandy Creek. The evidence in other respects is confused and conflicting, but sufficient to raise the questions presented by the several prayers on either side, of which four were offered by the appellee, and four by the appellant, Wilson. No question is raised upon the granting of the appellee's first, third and fourth prayers, and it is admitted the appellant's third prayer was correct and properly granted. The action of the Court upon the remaining prayers is now to be reviewed. The legal proposition presented by the appellee's second prayer, is, upon the facts therein stated and left to the finding of the jury, that there was in law such a delivery of the iron by Whitman, the vendor, to Gill, Hardman & Stephens, the vendees, as precluded the vendor from the exercise of any acts of ownership over it without the assent of the vendees, even though subsequent to such agreement of sale and delivery, they failed in business and were under protest. The hypothesis of this prayer puts out of view the existence of the vendor's lien, because it leaves to the jury to find the assignment was *bona fide*, made in consideration of an *antecedent indebtedness* of the vendor to the vendees, and was, therefore, correct, provided the facts stated constituted a sufficient delivery to pass the title to the property to the vendees. The facts upon which the delivery is based are, that whilst the iron was thus partly at the furnace and on the road, the vendor in pursuance of the agreement of sale, " and *for the purpose of making delivery* of the iron " to the vendees, directed his agent to show the same to the

agent of the vendees, and the latter was accordingly shown the same at the furnace and on the road by the agent of the vendor, and the vendor then and there directed the said agent of the vendees to have the iron charged in the books of the vendor against the vendees, and it was so charged. In deciding what acts will constitute delivery, regard must be had to the subject-matter of sale, the character of the transaction and the intention of the parties, in order to ascertain whether the delivery was such as the nature of the case admitted. Where ponderous articles incapable in the ordinary course of business of actual manual delivery, are the subject of sale, symbolical or constructive delivery is sufficient, and such constructive delivery may be implied from the acts of the parties. Marking, measuring, weighing, &c., are held to amount in such cases to constructive delivery, but the only reason why such acts are required is, to identify the particular goods sold, for if they are capable of being identified without these acts, and by the contract of sale are identified, that is sufficient and the title to the property passes. Here, there was no necessity for marking, measuring or weighing, or of separation of a part from a mass of the same material in order to identify the part sold. The sale was of the whole quantity of iron lying in piles at the furnace and on the road, and the parcels constituting the whole were pointed out and shown by the agent of the vendor to the agent of the vendees, and the whole was charged in the books of the vendor to the vendees, by the agent of the latter, under the direction of the vendor. These acts were done with the intent and for the purpose of making delivery, and were sufficient to make such constructive delivery as would pass the title to the property to the vendees—it was as complete a delivery for this purpose as the subject-matter under the circumstances reasonably allowed. In *Jewett vs. Warren,* 17 *Mass.,* 300, a person was appointed by the vendor to deliver logs lying within a boom, who went within sight of them with the vendee and showed them to him, and this was held as effectual for such kind of

property, as delivery over in hand of a chattel capable of such possession, and was sufficient to pass title, even though the vendee suffered the logs to lie in the boom as was usual in such cases, until he had occasion to use them, and did not place any person over the logs to take care of them for him. This case and those of *Van Brunt vs. Pike and Ward*, 4 *Gill*, 270; *Atwell vs. Miller and Mayhew*, 6 *Md. Rep.*, 10; *Hall and Loney vs. Richardson*, 16 *Md. Rep.* 396, and *Arnold vs. Delano*, 4 *Cush.*, 33, fully sustain the action of the Court in granting this prayer.

The claimant's first prayer, as presented, was properly refused, and the granting of it with the modification was correct, because as we construe the prayer it assails the transaction between Whitman and Hardman, and the firm of which Hardman was a partner, as a fraud upon the creditors of Whitman, and the assignment could not be assailed on this ground by the claimant, unless he showed himself to be a creditor of Whitman at the time the assignment was made. We find no error in the refusal of the claimant's second prayer, or in the modification to it by the Court, of which the appellant can complain. The acts of delivery mentioned in the appellee's second prayer, coupled with the statement in this prayer that *after* the sale to the firm the iron was *forwarded* by direction of Hardman, one of the firm, and therefore one of the vendees, to Sandy Creek, on its way to Wheeling, constituted not only such delivery as would pass the title, but such divestiture of possession as would prevent the assertion of the vendor's lien, or the regaining of possession by stoppage *in transitu*. As we construe the prayer, it admits that *after* the sale and delivery, and *before* the vendor attempted to assert his lien, the iron was forwarded by direction of the vendees to Sandy Creek, on its way to Wheeling. It does not present the case of a forwarding, by the vendor, through a carrier or middle-man to the vendees, or to a place designated by them for delivery, in which the right of stoppage *in transitu* would unquestionably

exist, but makes a case of an actual taking of possession by the vendee so as to put an end to the vendor's lien.

The claimant's fourth prayer presents another aspect of the case. It asserts that if the jury should find the iron was delivered, as before stated, but, in fact, remained at the furnace and on the road-side, without being taken away or otherwise put in possession of the vendees, and that such delivery was made against certain notes of the vendees given to the vendor in advance, for the iron, which notes were then outstanding and unpaid, and that the title to the iron remained in the same condition as between vendor and vendees, without the intervening claim of any third party at the time it was sold to Wilson, if the jury shall find such sale, and whilst the said iron so remained, the vendees were insolvent and unable to pay their said notes, then the vendor had the right to re-take the iron before it came into the actual possession of the vendees, and if the jury shall find that the vendor did re-take it, either by himself or an assignment to Wilson, who under said assignment re-took it, then the plaintiff cannot recover under the second issue. Assuming there was sufficient evidence to support the hypothesis of this prayer, (and, we think, the record, though not stating the testimony fully, furnishes sufficient evidence for this purpose,) it correctly announces the law and should have been granted. The law applicable to such a case as this prayer presents is very clearly and accurately stated by Chief Justice SHAW, in the case of *Arnold vs. Delano*, 4 *Cush.*, 38, 39. "There is," says he, "manifestly a marked distinction between those acts, which, as between vendor and vendee, upon a contract of sale, go to make a constructive delivery and to vest the property in the vendee, and that actual delivery by the vendor to the vendee, which puts an end to the right of the vendor to hold the goods as security for the price," and as to a sale on credit, which was the case he was deciding, he says: "but the law in holding that a vendor who has thus given credit for goods waives his lien for the price, does so on one implied condi-

tion, which is, that the vendee shall keep his credit good. If, therefore, before payment the vendee become bankrupt or insolvent, and the vendor still retains the custody of the goods or any part of them; or if the goods are in the hands of a carrier or middle-man on their way to the vendee, and have not yet got into his actual possession, and the vendor before they do so can regain his actual possession by a stoppage *in transitu;* then his lien is restored and he may hold the goods as security for the price." In that case the subject of sale was wood cut and corded on the vendor's land. The sale was on credit, a note at six months being given in payment. The vendee had a license to enter and take the wood at any time within a year, but did not do so, and before the note matured became insolvent, and the Court held that whilst there was a good sale and delivery as between vendor and vendee, yet the lien being an incident to the possession was not defeated, because there had been no change of possession — that remained in the same condition at the time of insolvency as at the time of sale. The lien of the vendor always exists until he voluntarily and utterly resigns the possession of the goods sold and all right to detain them. So long as the vendor does not surrender actual possession, his lien remains, although he may have performed acts which amount to a constructive delivery, so as to pass the title or avoid the statute. In all cases of symbolical delivery, which is the only species of constructive delivery sufficient to give a final possession to the vendee, it is only because of the manifest intention of the vendor utterly to abandon all claim and right of possession, taken in connection with the difficulty or impossibility of making an actual and manual transfer, that such a delivery is considered as sufficient to annul the lien of the vendor. *Story on Sales, secs.* 286, 290. Upon the facts hypothetically stated in this prayer, the iron remained in the same places at the time of the insolvency of the vendees, and when it was taken possession of by the claimant, under the authority of the vendor, in which it was at the time of sale. It was as

much in the vendor's possession then as when sold. No change of possession was effected, there was no symbolical delivery and no act of ownership exercised over it by the vendees. Under such circumstances the vendor had a right to assert his lien in the manner in which the prayer states it was done.

*Judgment reversed and*
*procedendo awarded.*