Sneed, J.,
delivered a dissenting opinion.
This is an application to vacate a judgment of this Court rendered at the last term in a case brought into this Court by an appeal in error from a judgment of the Circuit Court' of Warren county upon an agreed case. The application is founded *184 upon the provisions of the Code which authorizes a correction of errors apparent in the record in judgments or decrees already rendered in this' Court, and the vacating of judgments in certain cases. The first provision is by section 2877, and is in the words following: “ The Circuit, Chancery and Supreme Court may, at any time, after final judgment or decree, and while the case is still in such courts, amend any clerical error, mistake in the calculation of interest, or other mistake or omission in the judgment or decree, when there is sufficient matter apparent on the record, the papers in the cause, or entries of a presiding Judge to amend by. By section 2878, it is provided that “ every mistake apparent on the face of the record may be corrected at any time after final judgment, at the discretion of the court.” And in the section next succeeding is the provision, “ In all the foregoing cases, if the cause has been finally disposed of, and the parties are therefore not before the court, the party seeking the correction shall give the adverse party ten days’ notice of his intention to move for a correction of the supposed mistake.” By section 4501, it is provided that in all cases in which the Supreme Court may give judgment through inadvertence or oversight, when upon the face of the record no cause of action existed against the party, the Court may, upon its motion, vacate such judgment. And by section 4502, it is said that the Court may likewise, at any time, after final judgment, correct *185 mistakes apparent on the face of the record, as provided in section 2878.
The agreed case is as follows:
See it stated in full, ante page 164.
The judgment complained of was rendered at last term upon the following opinion delivered by Mr. Justice McClain, then one of the Judges of this Court:
See it set out, ante pages 167 to 170.
TJpon the foregoing opinion of the majority of the Court, delivered by Judge McClaiD, the judgment complained of in this case was rendered.
The judgment upon the facts of the case as against Colyar & Marks is manifestly an improper judgment, and the question recurs, has the Court, under these statutes, such a control over its own judgment as to vacate one which is discovered upon the record to do an injustice and a wrong. The opinion which controverts this prerogative of the Court is founded upon the authority of Elliot v. Cochran, 1 Col., 389. TJpon a careful reading of the opinion of the court in that case, it will be found that the question in judgment in this ease was not before the court. The question in that case was not whether this Court had the power to vacate an entire judgment, but whether it could “ correct a mistake ” apparent upon the face of the record. The mistake proposed to be corrected arose upon a re-statement of the account taken by the master in that case, and was apparent on inspection of the original and final -decrees in the *186 cause, and it is thus stated in Judge Wright’s opinion: “ He (the Master) not only, omitted to calculate interest at annual rests upon the hire of the slaves, but failed to charge the interest altogether, save for one year on each annual hire, the result of which was, that the balance, instead' of being in favor of the complainants, was against them to the amount of $198.60. It does not appear that this omission as to the interest, and its mode of calculation, was known to the parties, or their counsel, until after the adjournment of the term of the Court, at which the final decree was rendered; and we are satisfied • it was not. The mistake was apparent on inspection of the original and final decrees and the report, and was obviously made by the Clerk in stating the account, and escaped the detection of this Court in rendering the final decree.”
In that case of Elliot v. Cochran, the court expressly say that the case now before us, having originated anterior to the Code, must be decided upon the law as it then existed, and that the correction insisted upon is allowable both by the Act of 1856, c. 70, and the common law. And it is upon the provisions of the Act of 1856 that the case was decided. The provision of that act, is, that the Court shall hereafter have power to correct all mistakes apparent upon the face of the record at any term after final judgment, said power to be exercised at the discretion of the Court. This pro *187 vision was carried into the Code, and is to be found in sec. 2878. And it is clear that the question as to the power of the Court to vacate its judgments, as provided in see. 4501, was not before the Court in that case — nor was the interpretation of said section involved or considered in that case. It may be observed that there is a broad distinction between the vacating a judgment when upon the face of the record no cause of action existed against the party as contemplated in the section last referred to — and the mere correction of a mistake apparent on the face of the record, as contemplated in the Act of 1856, c. 70, and in sec. 2878 of the Code. Indeed this distinction is made prominent by the express words of the section which immediately follow that which provides for the vacating of improper judgments, which is in these words, “the Court may likewise at any time after final judgment correct mistakes apparent on the face of the record, as provided in sec. 2878.” It is apparent then, that ' it was intended by sec. 4561 to make a grave and important innovation upon the long established doctrines of the common law in regard to the powers of a court of record over its own judgments. At common law the power of this Court over its records was limited for the most part to its annual terms, and to the correction of mere clerical misprisions which were apparent upon them. A cause might be re-heard at the same term, and an improper judgment or *188 decree corrected. The argument ab inconvenienti of the Court in Elliot v. Cochran, in stating these principles of the common’ law, has much force as applicable to the common law rules — but the spirit of our legislation has been to break down . all barriers that stand in the way to complete justice, and never to allow the considerations of the mere convenience of a Court to give sanction to the perpetration of a judicial wrong. This Court held, even before the Act of 1856, c. 70, that a clerical mistake in a judgment might be corrected at a term subsequent to that at which the judgment was rendered: 1 Hum., 379. And in Ridgeway v. Ward, 4 Hum., 430, it was held that clerical errors may be corrected by the Court at a subsequent term, but cannot be corrected from the memory of the Judge, or from written evidence filed in the cause, but must be corrected by proceedings of record. But these cases had reference to errors and mistakes merely clerical. The first innovation then made by the Code upon these doctrines of the common law was by sec. 2877, which gives the Court the power to correct not only clerical errors, but mistakes or omissions in the judgment or decree itself, where there is sufficient matter apparent on the record, the papers in the cause, or entries of a Judge, to amend by. But this relief was confined to applications made within twelve months after final judgment or decree. The next provision was for the correction of “every mistake” apparent on the face of the record at any term after final *189 judgment at the discretion of the Court. The next step was to give the Court the power, without reference to the time of the decree or judgment, in all cases in which the Court has rendered a judgment through inadvertence or oversight, when upon the face of the record no cause of action exists against the party, to vacate such judgment on its own motion, 4501.
Now, what is the obvious and pervading object of this enactment? It was to correct a wrong and injustice done under judicial authority, when it was apparent that no cause of action exists against the party complaining, which justifies the judgment of the Court. 'What is it that the law authorizes to be vacated? It is not a mere clerical error, the result of inadvertence, but it is the solemn judgment of the court — the result of its deliberation upon the facts of the ease. It is the error the court has made in adjudicating upon the rights of the parties. An error of judgment. The result of oversight or inadvertence. . Noes this statute mean an inadvertence to facts, or an inadvertence as to the law of the case? Where are we to Toole for the evidence of such inadvertence? We are to look to the face of the record. If it appears there that no cause of action existed against the party — that a great wrong has been done to him— then it results that there must have been either oversight as to the matter of fact, or inadvertence as to the matter of law. It may be observed, that the use of these two words have a special *190 significance in ascertaining tlie sense of this statute. They are not synonyms tbe one of tire other. The word oversight means the casual overlooking of something that should have been seen. In the statute it means that some important fact has been overlooked by the Court in making up its judgment. The word inadvertence means something more than oversight. The word inadvertence is defined to be “heedlessness/’ a “mistake or fault which proceeds from negligence of thought/’ Where are we to look for the evidences of this heedlessness — this mistake proceeding from negligence of thought, but in the record itself? If we find there that injustice has been' done — that the Court has done itself as well as the citizen a grievous wrong by violating his legal rights — then we have the case of inadvertence contemplated in the statute; and it is not the less so because the proceeding is the result of the deliberate judgment of the Court. And it was this very evil the legislature intended to remedy, when it made these gradual and progressive innovations upon the ancient doctrine of the common law; that there was a mystic sanctity about a judicial record that could not be violated, no matter how deadly the wrong which had been done to the citizen.
The observations of the court in Elliot v. Cochran, as to the value of those doctrines of the common law, have no application to the changes made by the statute, and are not pertinent in considering its proper interpretation. “As to the *191 errors in. tbe judgment of the court in point of law,” says the court in that case, “existing in the decree upon which the report is based, or. in unwarranted deductions of fact, complained of, they, upon the principles already stated in this opinion, are beyond our reach — the 'law of the decree, as well as its conclusions upon the testimony in the cause constitute the deliberate judgment of this case, and cannot now be changed. They do not stand upon the same ground as the clerical error, or omission of the clerk: 1 Col., 395. But in considering these observations of the judge, who delivered the opinion, we must remember to confine them to the case then in judgment, and to the law, as it then existed, and which he was then expounding. By the present law, the conclusions of the court as embodied in its judgment or decree, however solemnly or deliberately made, are not conclusive of the rights of the parties; they are not so consecrated that they must stand as a perpetual monument of error, injustice and folly; but if it appear that no cause of action existed against the party at the time of the judgment — the mandate of the law is, that however irksome or inconvenient to the Court the proceeding may be —the judgment shall be annulled, and justice shall be done.
Now, the case in judgment affords the very best possible vindication of the wisdom of this statute, and the aptest illustration also of its practical operation. It is acknowledged on all hands that in *192 truth and in fact no cause of action justifying this judgment exists in this record agaiust these defendants. It is so solemnly announced in the opinion of the court, delivered by the dissenting judge, and to fix an unjust demand upon these defendants, resort must be had to the technical doctrine of estoppel, which, with 'the greatest respect for the learning of the court, I must be permitted to say has been totally perverted and misapplied in this case. The majority of the Court holds that the defendants are estopped from asserting that the payment of the debt was in Confederate money, because their receipt imports good money. Now, an estoppel cannot be better defined than as it is defined briefly in Stephen on PL, 239: “A preclusion in law, which prevents a man from alleging or denying a previous fact, in consequence of his own previous act, allegation or denial of a contrary tenor.” In Gould on PL, it is said to be “a plea which neither admits nor denies the facts alleged by the plaintiff, but denies his right to allege them.” Thus it is said, “when a fact has been admitted or asserted for the purpose of influencing the conduct of, or deriving a benefit from another, so that it cannot be denied without a breach of good faith, the law enforces the rule of good morals as a rule of policy, and precludes the party from repudiating his representations, or denying the truth of his admissions,” 5 Ohio, 199; Bawle, Cov., 407. And so, says Mr. Stephen, this doctrine of law *193 gives rise to a kind of pleading that is neither by way of traverse, nor confession and avoidance, viz.: a pleading that, waiving any question of fact, relies merely on the estoppel, and after stating the previous act, allegation or denial of the opposite party, prays judgment, if he shall be received or admitted to aver contrary to what he before did or said. The pleading is called a pleading by way of estoppel: Steph. Pl., 290. It is said that es-toppels are odious in the law, and in equity they are never allowed to prevail - against the “ truth of the case.” The doctrine imports that one party would affirm a right or assert a fact that the other party says he shall not be permitted to affirm or assert, because he has already made some admission or done some act by which the law precludes him from asserting to the contrary. A receipt for money or property is not conclusive as to the character of funds or property, or the terms or conditions of the payment, but, unlike most writings, a receipt may be explained and interpreted by parol. As matter of law, then, an estoppel cannot be predicated of a writing of that kind. But however this may be, there is one view of this question of estoppel that is conclusive. It is, that so far from the plaintiffs pleading or relying upon an estoppel, or objecting to the defendants showing that the payment was in Confederate money, he has by his agreed ease solemnly admitted the fact that the payment was in Confederate money, and the very *194 question submitted by tbe plaintiff and tbe defendant for tbe determination of tbe Court was, whether, this payment in Confederate money made under all the circumstances, and received by defendants as attorneys, could create a liability against the defendants as tbe agents of tbe plaintiff'. Now agreed cases are to be determined upon tbe, facts agreed upon by tbe parties: 6 Yer., 490. The Court can raise no inferences of law of its own volition, except as they arise upon tbe facts agreed on. Thus, it is said, that “when a case is submitted upon an agreed statement of facts, the Court is bound to decide upon tbe facts as presented in- tbe record, and they can make no inferences unless of law, or undeniable consequences resulting from tbe facts agreed on. Vansant v. Roberts, 8 Md. R., 119; Van Brunt v. Pike, 4 Gill, 270; Wright v. Wright, 2 Md. R., 430. These inferences of law must spring out of tbe facts in tbe record, and must not rest upon hypotheses. How, then, can the doctrine of estoppel apply to this case, when tbe plaintiff has admitted tbe very fact which tbe Court says tbe defendant is estopped from affirming, and has also solemnly invoked the judgment of tbe Court upon tbe effect of tbe facts thus admitted?
We are utterly unable to account for this extraordinary judgment of a very learned Court, except upon one hypothesis. There is positively no cause of action in this record against ■ these defendants, which justifies this particular judgment, and this is conceded. We are constrained to believe that a *195 majority of the Court have overlooked the fact that the plaintiffs have admitted the character of this payment, and are expressly permitting the defendants to show it — and that through this inadvertence, they have rendered this judgment on a misapprehension of the facts, and upon the technical doctrine of es-toppel. ¥e cannot assent to the theory that our present liberal laws will tolerate such a reproach upon public justice — such a grievous wrong to the Court itself as well as to the citizen — as to permit this judgment to stand. "We hold that the dissenting opinion of Mr. Justice McClain, in the first proposition of law announced in his opinion, declares tfie true doctrine upon which this case is to be determined, and that there can be no recovery against these defendants, except upon the principles of law governing the relation of principal and agent. The contrary view, it seems to me, would render this beneficent statute fruitless and nugatory as a remedy for the evils it was intended to correct. The case must be a very clear one, however, that would authorize this Court to exercise the powers conferred by this statute; and it should be done with extreme caution, and always with due reference to the perils which would be inseparable from a loose construction. But rare as “ proper cases” under this statute may 'be, we hold this to be one of such palpable injustice appearing in the record, and based, as we believe, upon inadvertence as to the real facts of the case, that we have no hesitation' in pronouncing it a proper case for the ex *196 ercise of this statutory power. "We are not aware that this statute has ever come before this Court for interpretation; and we presume that no practice has been established for the government of the Court in cases which fall under it. This Court, however, has authority to prescribe its own rules of practice. But without laying down any general rule, we would hold this case to be one in which a re-argument here might be proper, that the rights of these parties might be settled according to the principles of law arising upon the state of facts agreed on.
It cannot be that under the terms of the statute, which are at once liberal and comprehensive, a judgment is to be permitted to stand, which ■ does a palpable wrong to the citizen, as admitted by the Court which pronounced it, merely because it would incommode a court of justice to open its records in order that a blemish of injustice may be obliterated from them. I hold that the Court owes it to itself, as well as to the citizen, that such a judgment should be vacated, whether the error was occasioned by “oversight” of a material fact, or “inadvertence” as to a principle of statutory or common law which controlled and vindicated the right of the citizen, and of which this judgment has deprived him. Thus believing, I am of opinion that this judgment should be vacated, and that the parties should be permitted to re-argue the case, and have it determined upon the plain and obvious principles of law which govern it.