ANDREW J. REEDER *vs.* ARTHUR W. MACHEN and
JOHN T. MASON, R., Receivers of MITKIEWICZ,.
COOKE & CO.

*Executory Contract for Delivery of Coal to be Separated from
the Bulk with Concurrence of Vendor—Appeal from Order·
refusing to Dissolve an Injunction—Art. 5, sec. 21, of the·
Code—Appeal from Order Determining a Question of Right
between parties, and directing an Account to be Stated—.
Receivers— Written Agreement.*

M., C. & Co. were wholesale dealers in coal, and R. dealt in the same
article at retail, the former renting their coal yard from the latter.
It was the course of dealing between these parties, that when R.
sold coal which he desired from M., C. & Co., he sent a delivery
order to them to deliver the coal to his carter, and he would make
monthly settlements for the amount so obtained. On the 19th
January, 1880, M., C. & Co. proposed to borrow $2000 from R.,
and to give him 500 tons of coal as security therefor. It appears
that it was understood and verbally agreed, that R. was to call for
the delivery of the coal as he might require it, and that the price
of the same was to be credited on the note to be given by M., C. &
Co. for the $2000. When the transaction came to be executed by
the payment of the money to M., C. & Co., and the delivery by
them of their note to R., accompanied by a receipted bill of par-
cels·for the 500 tons of coal, M. objected that, under that arrange-
ment, his firm would have no security for the coal, in case the note·
was paid at maturity. To meet this objection, a proviso was added
at the foot of the bill of parcels, thus : provided that a note of this
date for 90 days given by M., C. & Co. to A. J. R. for $2050, is
paid at maturity, this bill to be void; and signed by R. The bill
of parcels embraced three sorts of coal, with quantities and prices
stated. The coal thus pledged was part of a much larger bulk in
the coal yard of M., C. & Co., and had been in no manner sepa-
rated therefrom. R. received some portion of the coal from time
to time by delivery to him by M., C. & Co., in the usual way of
their dealing. On the 4th February, 1880, M., C. & Co., having
become involved in difficulties, R. sent hands and took away 385
tons of coal, and carried it to another place of deposit, without

Reeder *vs.* Machen and Mason, Receivers.

the consent of M., C. & Co. In a proceeding in equity by a creditor, in which receivers were appointed of the property of M., C. & Co., to enjoin R. from removing the residue of the coal, and to require him to return to the receivers the 385 tons taken away by him previously to the service of the injunction, it was HELD:

That there was not such a specific appropriation of the coal to the contract as to pass the property therein to R., and that he was not entitled to take possession thereof; and that the coal removed by him remained the property of M., C. & Co., and the receivers were bound to take charge of it.

The right of appeal is expressly given by sec. 21, of Art. 5, of the Code, from an order refusing to dissolve an injunction; and while no appeal will lie from a simple order requiring property to be delivered to a receiver, yet, from an order determining a question of right between the parties and directing an account to be stated on the principle of such determination, an appeal will lie.

So far as parol evidence of a verbal agreement may tend to change or modify a written agreement subsequently made, it is inadmissible.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The receipted bill of parcels and contract mentioned in the opinion were as follows:

MITKIEWICZ, COOKE & Co.,

Wholesale and Retail Dealers in all kinds of Coal.

Office 39 Post-Office Ave.   R. R. Yard, Cathedral Street, near Biddle.

Terms :– Cash.

BALTIMORE, Jany. 19th, 1880.

Mr. Andrew J. Reeder,                                   DR.

To one hundred tons of No. 1 White Ash, @ $5.50.......................................................... $   550 00
" one hundred tons of No. 2 (egg) White Ash, @ $5.50............................................        550 00
" three hundred tons of No. 3 Stove, @ $5.75     1,725 00

Paid..............................................................  $ 2,825 00

(Signed)           MITKIEWICZ, COOKE & Co.

Provided that a note of this date for 90 days, given by the Messrs. Mitkiewicz, Cooke & Co., to Andrew J. Reeder, for two thousand and fifty dollars, ($2,050.00,) is paid at maturity, this bill of sale to be void.

(Signed)          ANDREW J. REEDER.

It also appears from the record, that on the 26th January, 1880, Mitkiewicz, Cooke & Co. confessed judgment in the Superior Court of Baltimore City for $34,767.75; at the suit of Henry J. Kintz, Trustee; a writ of *fieri facias* was issued on the 28th of the same month, and on the following morning early, Alfred E. Smyrk, the Sheriff of Baltimore City, levied upon all the coal and other property of Mitkiewicz, Cooke & Co. in their coal yard. The coal was in one large pile upon the premises rented and occupied by Mitkiewicz, Cooke & Co.

On the 4th February, 1880, the appellant, having given a bond of indemnity to the sheriff, reciting that the sheriff had levied upon all this coal, and that he claimed a part of it, proceeded to separate and remove coal from the mass above referred to, and had removed 385 tons when stopped by the injunction issued in this case.

The cause was argued before BARTOL, C. J., ALVEY, ROBINSON, IRVING and MAGRUDER, J.

*James McColgan,* for the appellant.

*John T. Mason, R.,* and *Arthur W. Machen,* for the appellees.

ALVEY, J., delivered the opinion of the Court.

The bill in this case was filed on the 5th of February, 1880, by Charles L. Cooke against Eugene Mitkiewicz and James A. Cooke, trading as Mitkiewicz, Cooke & Co., Henry J. Kintz, Andrew J. Reeder, and A. E. Smyrk, Sheriff of Baltimore City.

The complainant alleged himself to be a creditor of of Mitkiewicz, Cooke & Co., and that the members of that firm were insolvent, and that, by reason of certain fraudulent transactions referred to in the bill, he was in danger of losing his claim. The debtor firm were engaged as wholesale coal dealers in the city, and Reeder, one of the defendants, was engaged as retail dealer in the same article—the former renting their coal yard from the latter. In the bill the complainant charged that he was informed and believed that Mitkiewicz had borrowed from Reeder, on his own individual account, the sum of $2,000, and had given Reeder as security for the loan, a receipted bill of parcels for 500 tons of coal belonging to the partnership; but that there was no delivery of the coal, or separation of the same from the general mass of the stock of the partnership, and that the transaction was without the knowledge of the co-partner, Cooke, and was wholly fraudulent on the part of Mitkiewicz : That the latter had no authority so to dispose of the coal; and that Reeder, with the connivance of Mitkiewicz, was then in the act of removing the said 500 tons of coal. The bill prayed for an injunction, and the appointment of a receiver.

An injunction was granted and issued, and receivers were appointed, immediately on filing the bill.

The defendants answered the bill; and in the answer of Reeder he denied the material allegations of the bill so far as they related to himself, and set up claim to the 500 tons of coal, as having been sold and transferred to him by an executed contract of sale.

The receivers, on finding that Reeder had, on the 4th and 5th of February, 1880, but previous to the service of the injunction, removed a large portion of the 500 tons of coal from the coal yard of the insolvent firm, filed a petition, alleging that such removal was unauthorized and unlawful, and that Reeder had refused, on demand, to

deliver to them as receivers, the coal so taken. Whereupon they prayed an order upon Reeder, requiring him to deliver to them the coal thus taken. The Court passed the order *nisi*, and Reeder, in his answer, re-asserted his right and claim to the coal, and his right to remove the same, and denied the right of the receivers to take charge of it. He admitted that he had, on 4th of February, 1880, apprehending trouble from the embarrassed condition of the affairs of Mitkiewicz, Cooke & Co., removed about 385 tons, in addition to what had been previously received by him.

Upon the question thus raised a large amount of testimony was taken by the parties ; but before the testimony was returned, Reeder moved to dissolve the injunction, so far as the same affected him.

Upon return of the evidence, the case was heard upon the motion to dissolve, and also upon the application to require the coal to be delivered to the receivers. The Court refused to dissolve the injunction, and determined and ordered that the coal should be delivered to the receivers, and that Reeder had acquired no right or title thereto; and that an account should be stated of the proceeds of sale, &c. It is from these orders that the appeal has been taken by Reeder.

The case is properly here under section 21, Art. 5, of the Code. The right of appeal is expressly given from an order refusing to dissolve an injunction ; and while no appeal will lie from a simple order requiring property to be delivered to a receiver, yet, from an order determining a question of right between the parties, and directing an account to be stated on the principle of such determination, an appeal will lie. Here the question of right to the coal was fully raised, considered, and definitively decided by the order of the 9th of October, 1880, and an account directed to be stated. The case is therefore brought fully within the purview of the statute.

Reeder having been made a party defendant, and the question of his right to take or appropriate the coal having been raised and distinctly put in issue by the allegations of the parties, the Court was not only called upon to decide the question of the right of the receivers to take possession of it, but to decide the question of the right of property in the coal, and to enforce obedience to its order requiring the coal to be delivered to the receivers. *Parker vs. Browning,* 8 *Paige,* 388. It was upon his alleged right of property in the coal that Reeder founded his motion to dissolve the injunction; and it was in support of that right that he produced the proof that was laid before the Court, and which was considered in determining the right of property.

The material facts of the case, involved in the present inquiry, are not numerous or complicated, and they are well summarized by the learned Judge who decided this case below. The facts as collated by him are, that Mitkiewicz, Cooke & Co. were wholesale dealers in coal, and Reeder dealt in the same article at retail. It was the course of dealing between the parties, that when Reeder sold coal which he desired from Mitkiewicz, Cooke & Co., he sent a delivery order to them to deliver the coal to his carter, and he would make monthly settlements for the amount so obtained. This being their course of dealing, Mitkiewicz, Cooke & Co., on the 19th of January, 1880, proposed to borrow of Reeder $2000, and to give him 500 tons of coal as security therefor. It is proved by Oliver Reeder, who was present at the transaction, that it was understood and agreed verbally, that his brother, A. J. Reeder, *was to call for the delivery of the coal as he might require it,* and that the price of the same was to be credited on the note to be given by Mitkiewicz, Cooke & Co. for the $2000. When the transaction came to be executed by the payment of the money to Mitkiewicz, Cooke & Co., and the delivery by them of their note to Reeder, accom-

panied by a receipted bill of parcels for the coal, Mitkiewicz objected that, under *that* arrangement, his firm would have no security for the coal, in case the note was paid at maturity. It was to meet this objection that the proviso was added at the foot of the bill of parcels, thus: " Provided that a note of this date for 90 days, given by the Messrs. Mitkiewicz, Cooke & Co., to Andrew J. Reeder, for two thousand and fifty dollars, ($2,050.00,) is paid at maturity, this bill of sale to be void;" and signed by Reeder. The bill of parcels embraced three sorts of coal, with quantities and prices stated. The coal thus pledged or mortgaged was part of a much larger quantity or bulk in the coal yard of Mitkiewicz, Cooke & Co., and had been in no manner separated therefrom. Reeder did, in fact, receive some portion of the coal from time to time by delivery to him by Mitkiewicz, Cooke & Co. in the usual and ordinary way of dealing between them; but on the 4th of February, 1880, the day before the filing of the bill in this case, Mitkiewicz, Cooke & Co. having become involved in difficulties, he sent hands and took away the 385 tons of coal now in dispute, and carried it to another place of deposit. This taking and removal of the 385 tons of coal were the acts of Reeder alone, without the consent or acquiescence of Mitkiewicz, Cooke & Co.; but he has alleged, and indeed proved, " that he took possession of the coal against the wishes and without the consent of either of said parties," and in the assertion of right thereto.

The appellees excepted to the parol testimony offered by the appellant Reeder, tending to modify the agreement of the parties as expressed in the proviso to the receipted bill of parcels; and, of course, so far as that testimony may tend to change or modify the agreement it is inadmissible, and therefore subject to the exception. The written contract of the parties is the best exponent of their intentions with respect to the subject-matter, and

the terms and conditions of their agreement. But, in the view we have of this case, the question of the admissibility of the parol evidence is quite immaterial; for considering the case with or without that testimony, the result is the same. The whole question is, whether there was such a specific appropriation of the coal to the contract, as to pass the property therein to the purchaser, and which entitled him to take possession thereof, without further action or consent of the seller ?

This question has been the subject of a great many decisions, made upon a variety of facts, and the law must be regarded as perfectly well settled; and the only difficulty that can exist is in the application of established principles to the special facts of each particular case.

Where there is an immediate sale of a specific and ascertained chattel, and nothing remains to be done by the vendor as between him and the vendee, the property in the thing sold vests in the vendee, and then all the consequences resulting from the vesting of the property follow;—such as the risk of loss, the right to vindicate it against trespass, conversion, &c. The reason of the rule in such case is, that, by the contract itself, the vendor appropriates the specific chattel to the vendee, and the latter thereby agrees to take that specific chattel, and to pay the stipulated price; and that being so, the parties are then in the same situation as they would be upon actual delivery of goods in pursuance of a general contract. The very appropriation of the chattel by the contract is equivalent to delivery by the vendor, and the assent of the vendee to take the specific chattel and to pay the price agreed on is equivalent to his accepting possession. The effect, therefore, of the contract itself, is to vest the property in the vendee. *Dixon vs. Yates*, 5 *B. & Ad.*, 313, 340; *Thompson vs. Balt. & Ohio R. Co.*, 28 *Md.*, 404; *Wait vs. Baker*, 2 *Exch.*, 1. This right of property, however, may be, in certain cases, subject to the

right of the vendor to retain possession of the thing sold until the price agreed on be paid, or secured to be paid, as contemplated by the contract of sale.

But this interpretation of the contract and the effect thereof will be greatly modified by the fact that something remains to be done by the vendor in order to individualize the subject-matter of the contract, or to separate and distinguish the part sold from the whole of a greater quantity or bulk of the same article, or to ascertain the weight or measure of a particular lot or parcel of any article that may have been the subject of sale, where the weight or measure may be essential in determining the amount of the price to be paid.

In the leading case of *Hanson vs. Meyer*, 6 *East*, 614, the defendant sold a parcel of starch, at a certain price per cwt., and, by order, directed the warehousemen to weigh and deliver to the vendee *all* his starch. Part thereof was weighed and delivered, and then, the purchaser becoming bankrupt, the vendor countermanded the order for the delivery of the remainder, and took it away. In an action for trover, brought by the assignee of the bankrupt, it was held, that under that contract the absolute property in the starch did not vest in the vendee *before the weighing,* which was to precede the delivery, and to ascertain the price; and that part of the starch having been weighed and delivered to the vendee by his direction, the vendor might, notwithstanding such part delivery, upon the bankruptcy of the vendee, retain the remainder, which still continued unweighed in the warehouse in the name and at the expense of the vendor. In delivering the judgment, Lord ELLENBOROUGH, C. J., said: "Till it was *weighed*, they, the warehousemen, as his agents, were not authorized to deliver it. Still less were the buyers themselves or the present plaintiffs, their assignees, authorized to take it by their own act from the Bull Porters' warehouse. And if they could not so take

it, neither can they maintain this action of trover, founded on such a supposed right to take, or, in other words, founded on such a supposed right of property in the subject-matter of this action. If any thing remain to be done on the part of the seller, as between him and the buyer, before the commodity purchased is to be delivered, a complete present right of property has not attached in the buyer ; and of course this action, which is accommodated to and depends upon such supposed perfect right of property, is not maintainable."

If, therefore, only a part of a bulk be sold, as in this case, so that weighing or separation is necessary to determine the identity or individuality of the part so sold, or if the whole of a commodity be sold, but weighing or measuring be necessary to ascertain or compute the price, because the quantity is unknown, unless the intention to pass the property be manifest, without further act on the part of the vendor, the act of weighing or measuring is deemed essential to vesting the property in the vendee. This is abundantly established by many decided cases, among which we refer to *Busk vs. Davis*, 2 *M. & S.*, 397 ; *Simmons vs. Swift*, 5 *B. & Cr.*, 857 ; *Shepley vs. Davis*, 5 *Taunt.*, 617 ; *Swanwick vs. Sothern*, 9 *Ad. & El.*, 895 ; *Golder vs. Ogden*, 15 *Penn. St.*, 528 ; *Scudder vs. Worster*, 11 *Cush.*, 573. In all such cases the concurrence of the seller in the actual weighing or measuring is deemed essential, and as a condition precedent to the vesting of the right of property in the buyer ; and until the separation and appropriation of the part sold, or the weighing or measuring be done, the contract is merely executory. *Blackb. on Sales*, 152 to 158. There may be, it is true, power delegated to the buyer to separate from a larger quantity, and to weigh or measure the commodity bargained for, in the absence of the seller; and upon such separation, weighing or measuring being done, in pursuance of the authority, the property will vest in the ven-

dee.  But there is no evidence whatever of any such authority having been delegated in this case.  On the contrary, the evidence of the course of dealing between the parties, coupled with the nature of the contract, and its silence upon the subject, all go strongly to negative the supposition that any such authority was ever contemplated by the parties.

Such being the case, it is very clear, we think, that Reeder had no such vested right of property in any 385 tons of coal in the mass or bulk in the yard of the sellers, as to entitle him to separate from the bulk and weigh that quantity, and appropriate it to the contract, without the concurrence and direction of the vendors.  And it follows that the 385 tons of coal removed by him remained the property of Mitkicwicz, Cooke & Co., and that the receivers were entitled, and in duty bound, to take charge of it, under the order of Court.

The orders appealed from must, therefore, be affirmed, with costs, and the case be remanded.

*Orders affirmed, with costs,*
*and cause remanded.*